1999 ND 72

**Joseph CLARYS, Plaintiff and Appellee,**

v.

**FORD MOTOR COMPANY, Defendant and Appellant.**

**No. 980337.**

Supreme Court of North Dakota.

April 27, 1999.

Marnell W. Ringsak, of Severin, Ringsak & Morrow, Bismarck, N.D., for plaintiff and appellee.

Jonathan P. Sanstead, of Pearce & Durick, Bismarck, N.D., moved for admission of John D. Sear (argued), Bowman and Brooke, LLP, Minneapolis, Minn., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Ford Motor Company appealed from an order denying its motion for summary judgment dismissal of Joseph Clarys's tort claims for damages incurred when Clarys's 1990 Ford Aerostar van ignited and burned in a parking lot. Ford also appealed from the judgment awarding Clarys $5,873.50 damages. We hold the economic loss rule applies to consumer purchasers. We, therefore, reverse the judgment and the order denying Ford's motion for summary judgment, and we remand for entry of judgment dismissing Clarys's tort claims against Ford.

I

[¶ 2] In 1995, Clarys bought a 1990 Ford Aerostar van from the Car & Truck Connection, Inc., of Williston. The van had been driven 95,182 miles when Clarys purchased it. In September 1996, the van, while sitting unattended in a parking lot, was destroyed when it ignited and burned. The fire was caused by a defective ignition switch designed, manufactured, and installed by Ford. Clarys's insurer, National Farmers Union Insurance Company, paid Clarys for the fire damage to the van. It then brought a subrogation action, in Clarys's name, against Ford.

The complaint alleged negligence, product liability, and breach of warranty.

[¶3] Ford filed a motion for summary judgment dismissal of the case, alleging the negligence and product liability tort claims were precluded by the economic loss doctrine and the breach of warranty contract claim was barred by the statute of limitations. The trial court granted the motion for dismissal of the breach of warranty claim, concluding the statute of limitations had run. However, the trial court denied Ford's motion to dismiss the negligence and product liability claims, concluding the economic loss doctrine, which bars tort claims when the only damage is to the defective product, does not apply to consumers. Ford, reserving its right to appeal the trial court's ruling on the motion for summary judgment, entered a stipulation conceding liability and damages. The trial court entered judgment for Clarys, and Ford appealed.

[¶4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶5] The sole issue raised by Ford on appeal is whether the trial court erred, as a matter of law, in denying the motion to dismiss Clarys's tort claims on the ground the economic loss doctrine does not apply to consumers. Summary judgment is a procedure for the prompt and expeditious disposition of a controversy without trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the result. *Estate of Thompson*, 1998 ND 226, ¶6, 586 N.W.2d 847. On appeal, we determine whether a genuine issue of fact exists and whether the law was applied correctly. *Martin v. Martin*, 1997 ND 157, ¶6, 568 N.W.2d 280. Questions of law are fully reviewable on ap-

peal. *Stanley v. Turtle Mountain Gas & Oil, Inc.*, 1997 ND 169, ¶6, 567 N.W.2d 345.

### A

[¶6] This Court first applied the economic loss doctrine in *Hagert Farms v. Hatton Commodities, Inc.*, 350 N.W.2d 591, 595 (N.D.1984). Hagert Farms purchased pinto bean seed from Hatton Commodities, Inc. The seed was contaminated, and consequently the bean plants were diseased and had to be destroyed. Hagert Farms sued Hatton Commodities, Inc., for damages, alleging negligence, breach of warranty, and strict liability in tort. The case presented this Court the first opportunity to consider whether damages for a defective product could be recovered under a theory of strict liability in tort. This Court held the economic loss resulting from the defective bean seed could be recovered under express or implied warranty principles under the Uniform Commercial Code, but not in a strict liability tort claim under Section 402A, Restatement (Second) of Torts.[1] *Id.*

[¶7] This Court revisited the issue of the economic loss doctrine in *Cooperative Power Ass'n v. Westinghouse Elec. Corp.*, 493 N.W.2d 661 (N.D.1992). Cooperative Power Association (CPA) purchased a transformer from Westinghouse for use at its electrical generating station. An electrical arc within the transformer caused damages to it. CPA sued Westinghouse in federal court, alleging causes of action in contract and tort. The federal court certified to this Court the question whether a manufacturer of a product sold in a commercial transaction could be held liable in negligence or strict product liability for economic loss resulting from the failure of a component part of a product, resulting in damage only to the product itself. Relying upon the United States Supreme Court decision in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), this Court applied the economic loss doctrine, holding CPA could not sue in tort for damages occurring only to the defective product, where there was no damage to per-

---

1. This Court adopted the rule of strict liability in tort under Section 402A, Restatement (Second) of Torts in *Johnson v. American Motors Corp.*, 225 N.W.2d 57, 58 (N.D.1974).

sons or other property. This Court explained the rationale underlying the economic loss doctrine:

> Tort law imposes responsibility on manufacturers of defective products because they are best able to encourage safer manufacture and design and to allocate the costs of injury arising from unsafe products.
>
> A contractual duty arises from society's interest in the performance of promises and has been traditionally concerned with the fulfillment of reasonable economic expectations. Society's need to spread losses is substantially lessened in commercial transactions where damage is to only the product itself, because those losses essentially relate to the benefit of the bargain between business entities. That loss is most frequently measured by the cost of repairs, the difference in the value of the product, or consequential damages attributable to the failure of the product to perform as expected. Those losses are based upon, and flow from, the purchaser's loss of the benefit of the contractual bargain and are the type for which a warranty action provides redress.

*Cooperative Power*, 493 N.W.2d at 664 (citations omitted). This Court recognized society's interest in safe products is adequately protected by allowing tort recovery when a defective product causes injury to persons or other property:

> Although society has a strong interest in safe products, the rules of negligence and strict liability for damage to property other than the product itself and for personal injury adequately protect that interest and provide manufacturers with incentive to produce safe products.

*Cooperative Power*, 493 N.W.2d at 665.

[¶ 8] Our decisions in *Hagert* and *Cooperative Power* involved commercial purchases by businesses, not consumers. In this case, we consider for the first time whether the economic loss doctrine should be applied to consumers.

**B**

[¶ 9] Most courts, like North Dakota, have adopted the economic loss doctrine and bar actions in tort when the only damage alleged is to the product itself. *See* Annot., *Strict Products Liability: Recovery for Damage to Product Alone*, 72 A.L.R.4th 12 (1989). The majority of courts which have adopted the economic loss doctrine have applied it to both consumers and business purchasers. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 572 N.W.2d 321, 325 (Minn.App.1997), and the cases it cites ("[o]ur conclusion that the economic loss doctrine applies to consumers as well as businesses in an action for loss of the product itself is consistent with opinions from foreign jurisdictions" ); *Alloway v. General Marine Industries*, 149 N.J. 620, 695 A.2d 264, 270 (1997), and the cases it cites ("[t]he vast majority of courts across the country likewise have concluded that purchasers of personal property, whether commercial entities or consumers, should be limited to recovery under contract principles").

[¶ 10] The separate and distinct functions served by tort and contract law, upon which the economic loss doctrine is based, apply equally to consumer and business purchasers of defective products. In refusing to exempt consumer purchasers of homes from the economic loss doctrine, the Delaware Supreme Court in *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1200–01 (Del.Supr.1992), explained contract remedies under the Uniform Commercial Code provide adequate recourse for both consumer and business purchasers of defective goods:

> [W]e are unable to accept Danforth's contention that Delaware should recognize an exception to the economic loss doctrine by allowing individual consumers, as distinguished from commercial buyers, to recover for economic loss based upon the alleged inherently unequal bargaining power between individual consumers and commercial sellers. Such a rule would defeat the legislative intent of the General Assembly in enacting Article 2 of the Uniform Commercial Code ... as the complete framework of the rights and remedies available to parties to a sale of goods contract. Article 2 confers broad

standing to raise warranty claims for economic loss on product users in privity of contract with the commercial seller and on product users who qualify as third-party beneficiaries ... Therefore, we see no reason to extend tort law into an area adequately governed by warranty law.

(citations omitted).

[¶ 11] In accord is the decision of the Supreme Court of New Jersey in *Alloway*, 695 A.2d at 268–69, which explains the Uniform Commercial Code provides a comprehensive system of recourse for consumers:

> Tort principles more adequately address the creation of an unreasonable risk of harm when a person or other property sustains accidental or unexpected injury. When, however, a product fails to fulfill a purchaser's economic expectations, contract principles, particularly as implemented by the U.C.C., provide a more appropriate analytical framework.
>
> ....
>
> By enacting the U.C.C., the Legislature adopted a comprehensive system of compensating consumers for economic loss arising from the purchase of defective products. The U.C.C. represents the Legislature's attempt to strike the proper balance in the allocation of the risk of loss between manufacturers and purchasers for economic loss arising from injury to a defective product.
>
> Consequently, the U.C.C. provides for express warranties regarding the quality of goods, as well as an implied warranty of merchantability, and an implied warranty of fitness for a particular purpose. When a seller delivers goods that are not as warranted, the buyer may recover the difference between the value of the defective goods and their value if they had been as warranted. Furthermore, a provision in a merchant's form is not binding on a consumer unless the consumer has signed the form. A consumer, moreover, may recover incidental and consequential damages.

(citations omitted).

[¶ 12] The economic loss rule is "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." *Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc.*, 620 So.2d 1244, 1246 (Fla.1993).

[¶ 13] Allowing a consumer exception to the economic loss doctrine would undermine warranty agreements that are part of any product sale:

> Regardless of whether a consumer is a commercial entity or an individual, a manufacturer's warranty as to the quality of its product is a bargained for condition of sale, the effect of which must not be undermined. If a consumer were entitled to bring an action under both contract and tort law where the only damage alleged is to the product, any limitation of the manufacturer's liability pursuant to the warranty would have little or no effect.... [S]uch a deleterious result can easily be avoided by limiting consumers in those situations to the remedies available under contract law.

*Jones v. General Motors Corp.*, 428 Pa.Super. 544, 631 A.2d 665, 666 (1993) (citation omitted); *see also Wellcraft Marine v. Zarzour*, 577 So.2d 414, 418 (Ala.1990) (damage to a defective product constitutes a loss of the benefit of the bargain which is a contract, not a tort, issue and applies equally to consumer and commercial purchasers). When a defective product causes damage to itself, only the consumer's product expectations are infringed, and those interests are protected under contract principles found within the remedies provided by the U.C.C. Those contract principles and statutory remedies would be seriously undermined if a consumer of a damaged product could proceed in tort and ignore the contract law requirements and the limitations which were part of the purchase transaction.

[¶ 14] The United States Supreme Court in *East River*, 476 U.S. 858, 866–72, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) did not confine its rationale to commercial transactions, but used very broad language in its discussion of the need to separate tort and contract claims:

> Products liability grew out of a public policy judgment that people need more

protection from dangerous products than is afforded by the law of warranty. It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort.

. . . .

The tort concern with safety is reduced when an injury is only to the product itself. When a person is injured, the "cost of an injury and the loss of time or health may be an overwhelming misfortune," and one the person is not prepared to meet. In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured. Society need not presume that a customer needs special protection.

(citations omitted). In subsequent cases, federal courts have applied the *East River* economic loss doctrine to consumer, as well as commercial, purchasers of vessels. *See*, *e.g.*, *Somerset Marine, Inc. v. Forespar Products Corp.*, 876 F.Supp. 1114, 1116 (C.D.Cal.1994); *Karshan v. Mattituck Inlet Marina & Shipyard Inc.*, 785 F.Supp. 363, 366 (E.D.N.Y.1992).

### III

[¶ 15] Legislative action subsequent to our decisions in *Hagert* and *Cooperative Power* supports application of the economic loss doctrine to both businesses and consumers. The plaintiff in *Cooperative Power* argued the statutory definition of "product liability action" in N.D.C.C. § 28–01.1–06(2), which was enacted in 1979, showed a legislative intent to make product liability actions available when a defective product results in damages only to the product itself. We rejected that argument:

We are not persuaded that Section 28–01.1–06(2), N.D.C.C., requires a different result. That statute defines a "product liability action" as "any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory . . . for or on account of personal injury, death, or *property damage*." [Em-

phasis added.] Although CPA argues that the term "property damage" indicates a legislative intent to make products liability theories applicable to a defective product that damages only itself, we disagree with that broad interpretation. CPA's interpretation of that statute would undermine the comprehensive body of law for sales transactions in Article 2 of the Uniform Commercial Code. Tort law was not intended to undermine the Uniform Commercial Code. It is an elementary rule of statutory construction that we construe related statutes in harmony in order to give meaning and effect to all provisions. The general purpose of Chapter 28–01.1, N.D.C.C., is to regulate and limit the scope of products liability actions. In the absence of any specific legislative intent to the contrary, we decline to interpret Section 28–01.1–06(2), N.D.C.C., to broaden the scope of negligence and strict liability actions and effectively undermine the warranty provisions of the U.C.C.

*Cooperative Power*, 493 N.W.2d at 666 (citations omitted). Thus, in our 1992 decision in *Cooperative Power*, this Court construed the term "property damage" in our product liability statute to mean damage to property other than the defective product itself. Under that interpretation, the statute does not permit a product liability tort action unless the defective product causes injury to persons or other property.

■ [¶ 16] The Tort Reform Act of 1993 placed additional limitations upon tort recovery. 1993 N.D. Sess. Laws ch. 324. As part of that act, the definition of "product liability action," under N.D.C.C. § 28–01.1–06(2), was recodified, under N.D.C.C. § 28–01.3–01(2), but the language was not changed. We have not found any evidence in the legislative history demonstrating an intent to expand or alter this Court's interpretation in *Cooperative Power* of the term "property damage" under the statute. The parties have not directed us to any such legislative history. When the courts have construed a statute, the legislature's long acquiescence in the interpretation, continued use of the same language, or failure to amend the interpreted language is evidence the court's interpreta-

tion is in accordance with the legislative intent. *Krehlik v. Moore,* 542 N.W.2d 443, 446 (N.D.1996); *Midwest Property Recovery, Inc. v. Job Service of North Dakota,* 475 N.W.2d 918, 925 (N.D.1991).

[¶ 17] The Product Liability Act, N.D.C.C. ch. 28–01.3, does not distinguish between consumer and business plaintiffs. If the legislature had intended to expand product liability actions to include claims for consumers when only the product itself is damaged, it easily could have altered the definition of product liability action to specifically include those claims. It did not. We conclude, therefore, tort actions under the statute can be brought when a defective product causes damage to persons or other property, but are not available to any plaintiff when only the defective product has been damaged.

### IV

[¶ 18] This Court's interpretation of our product liability law under N.D.C.C. ch. 28–01.3 is consistent with and supported by Section 21 of the Restatement (Third) Torts: Products Liability, which provides:

§ 21. Definition of "Harm to Persons or Property": Recovery for Economic Loss

For purposes of this Restatement, harm to persons or property includes economic loss if caused by harm to:

(a) the plaintiff's person; or

(b) the person of another when harm to the other interferes with an interest of the plaintiff protected by tort law; or

(c) the plaintiff's property *other than the defective product itself.*

(emphasis added). Under the Restatement, damages to the defective product itself are not recoverable in a product liability action. The drafters' comment explains damages to a product are compensable under the Uniform Commercial Code, not in tort:

d. *Harm to the defective product itself.* When a product defect results in harm to the product itself, the law governing commercial transactions sets forth a comprehensive scheme governing the rights of the buyer and seller. Harm to the product itself takes two forms. A product defect may render the product ineffective so that repair or replacement is necessary. Such a defect may also result in consequential loss to the buyer.... These losses are not recoverable in tort under the rules of this Restatement. A somewhat more difficult question is presented when the defect in the product renders it unreasonably dangerous, but the product does not cause harm to persons or property. In these situations the danger either (1) never eventuates in harm because the product defect is discovered before it causes harm, or (2) eventuates in harm to the product itself but not in harm to persons or other property. A plausible argument can be made that products that are dangerous, rather than merely ineffectual, should be governed by the rules governing products liability law. However, a majority of courts have concluded that the remedies provided under the Uniform Commercial Code—repair and replacement costs and, in appropriate circumstances, consequential economic loss—are sufficient. Thus, the rules of this Restatement do not apply in such situations.

This recent Restatement enactment supports our decision to apply the economic loss doctrine to all plaintiffs, including nonbusiness consumers. We agree with the Restatement drafters that the Uniform Commercial Code, not product liability tort law, governs actions of persons seeking redress for damages when the injury is confined to the defective product itself, and neither persons nor other property are damaged.

### V

[¶ 19] The economic loss doctrine recognizes the distinction between the bargain expectation interests protected by contract law under the Uniform Commercial Code and the safety interests protected by tort law. The distinction applies to consumer, as well as commercial, purchasers. When a defective product causes damage to persons or other property, the interest at stake is health and safety, irrespective of whether the initial purchase was a consumer or commercial transaction. Those safety interests are protected under tort law, which allows recovery by injured plaintiffs against a seller or manufacturer of an unreasonably dangerous defective

product. N.D.C.C. ch. 28–01.3. When, however, a product is defective and damages only itself, the interest at stake is the purchaser's expectation of receiving the bargained-for product. That interest is protected by the remedies provided under Article 2 of the Uniform Commercial Code, N.D.C.C. ch. 41–02. The Code provides a vast array of remedies, including recovery of consequential damages, when a product fails to meet consumer expectations. *See* N.D.C.C. § 41–02–94 (incidental and consequential damages recoverable from breaching seller).

[¶ 20] We conclude the economic loss doctrine applies to consumer purchasers and precludes Clarys's tort claims for damages to his Ford Aerostar van. We hold the trial court erred, as a matter of law, in denying Ford's motion for summary judgment dismissal of Clarys's tort claims. The order of the court denying Ford's motion for summary judgment dismissal is reversed, the judgment is reversed, and the case is remanded for entry of judgment dismissing Clarys's tort claims.

[¶ 21] VANDE WALLE, C.J., and NEUMANN, MARING and KAPSNER, JJ., concur.

