BEAM, Circuit Judge.
Arena Holdings Charitable, LLC, and RE Arena, Inc. (“Arena Holdings”) appeal the district court’s[1] grant of summary *293 judgment in favor of Harman Professional in this tort claim arising out of a fire that occurred at the Ralph Engelstad Arena in Grand Forks, North Dakota. We affirm.
I. BACKGROUND
The facts involved in this case as described by the district court are uncontested on appeal. This matter arises from a fire that occurred at the Ralph Engelstad Arena on July 3, 2011. Arena Holdings alleges the fire started when a Crown Macro-Tech 5002VZ amplifier produced a direct current to a speaker that spread to adjoining speakers located in the catwalk area of the Engelstad Arena. Harman Professional is the manufacturer .of the alleged defective amplifier, and Impulse Group installed the sound reinforcement system at the Engelstad Arena when it was originally built, and so installed the amplifier as well, ■
The fire caused approximately $5 million of damage throughout the Engelstad Arena, including damage to the building and fixtures, as well as damage to personal property. The fire directly damaged the arena structure and equipment in the vicinity of the amplifier and speakers. The presence of smoke and soot throughout the Engelstad Arena after the fire caused additional damage. Arena Holdings initiated this action against Harman alleging negligence, strict liability and post-sale failure-to-warn claims. Harman then filed a third-party complaint against Impulse Group, and others. The district court granted Harman’s motion for summary judgment, finding that the economic loss doctrine precluded Arena Holdings from recovering tort damages.
II. DISCUSSION
We review the district court’s grant of summary judgment de novo. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir.2011). Summary judgment is proper “if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Id. (quotation omitted).
A. Economic Loss Doctrine
Under the economic loss doctrine in North Dakota, economic loss resulting from damage to a defective product, as distinguished from damage to persons or other property, may be recovered in a cause of action sounding in contract, but not in tort. Leno v. K & L Homes, Inc., 803 N.W.2d 543, 550 (N.D.2011). “The economic loss doctrine distinguishes between bargain expectation interests, which are protected under contract law, and safety interests, which are protected under tort law.” Steiner v. Ford Motor Co., 606 N.W.2d 881, 885 (N.D.2000). North Dakota has yet to directly rule on the issue presented here — whether, or to what extent, redress can be sought in tort where there is injury not only to the defective product but also to other property.
In 1996, this circuit had occasion to predict how North Dakota would analyze this very subject in Dakota Gasification Co. v. Pascoe Building Systems and held that the North Dakota Supreme Court would likely conclude “that the economic loss doctrine extends to preclude liability in tort for physical damage to other nearby property of commercial purchasers who could foresee such risks at the time of purchase.” 91 F.3d 1094, 1101 (8th Cir. 1996). The facts and circumstances of Dakota Gasification as they relate to the contracting parties in this case are nearly identical.
In Dakota Gasification, the predecessor to the owner of a large coal gasification plant contracted for the construction of a *294 federally guaranteed $2 billion synthetic natural gas production plant, which was to be “one of the largest synthetic fuel plants in the world and the only one of its kind in the United States.” Id. at 1096. In part, the plans called for the construction of an oxygen plant, which was to be housed in a separate steel building but still within the larger plant. Id. Down a chain of subcontractors involved in the overall project, none of whom directly contracted with the Dakota Gasification plaintiff, one subcontractor that was to furnish the pre-engineered metal building that would enclose the oxygen plant contracted with Defendant Pascoe Building Systems who furnished the structural steel for the building. Id.
During the construction process in Dakota Gasification, several defective welds were discovered on some of the Pascoe materials and Pascoe repaired them. Id. The building was ultimately accepted after construction was completed. Id. However, eight years later, the roof of the building collapsed, causing damage to the steel building as well as parts of the oxygen plant contained within. Id. at 1097. Thé owner of the gasification plant sued Pascoe, among others, seeking to recover damages. Id. On appeal of an adverse summary judgment ruling in favor of Pascoe, the Eighth Circuit predicted that North Dakota would take the “modern,” foreseeability approach to the economic loss doctrine. Id. at 1100-01. Applying this approach, this court held that because damage to the other property in the physical proximity of the oxygen plant was foreseeable and within the contemplation of the parties when the oxygen plant was built, the economic loss doctrine precluded recovery. Id. at 1101.
Arena Holdings contends that Dakota Gasification missed the mark, pointing to a Supreme Court decision in 1997, see Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997), as well as the Restatement (Third) of Torts: Products Liability § 21, which both take a different approach to the economic loss doctrine. Arena Holdings essentially urges this court to define a more bright line rule — that physical damage to anything other than the product itself would be considered damage to “other property” and therefore subject to suit in tort. This, they argue, is more in line with the Supreme Court’s articulation in Saratoga Fishing and is most likely the avenue North Dakota would travel.
In Saratoga Fishing, the Court addressed the limits on the damages that a tort plaintiff can recover for physical damage to property caused by a defective product. 520 U.S. at 876, 117 S.Ct. 1783. The admiralty case involved a defectively designed hydraulic system in a fishing vessel, and the specific issue was whether equipment that had been added on by the boat’s initial owner after its purchase from the manufacturer was “other property” such that its loss could be recovered in tort. Id. at 877-78, 117 S.Ct. 1783. The ship itself constituted the original property. Id. at 877, 117 S.Ct. 1783. Applying and building upon its previous decision in East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), the Court determined that equipment added to a product after manufacture is not part of the original property, and in fact is “other property,” and compensation for damage to this other property can be recovered in tort. Id. at 879, 881,106 S.Ct. 2295.
Arena Holdings also alleges that the most recent version of the Restatement of Torts adopts the Saratoga Fishing approach as to whether damages to “other property” due to a defective product can be recovered in tort. Restatement (Third) *295 of Torts: Products Liability Ch. 4, Topic 3, § 21 cmt. e (“A defective product that causes harm to property other than the defective product itself is governed by the rules of this Restatement. What constitutes harm to other property rather than harm to the product itself may be difficult to determine.”). According to Arena Holdings, the Court’s position in Saratoga Fishing (bolstered by the Restatement) provides a reason for us to distance ourselves from the Dakota Gasification decision. At bottom, though, Saratoga Fishing is inapposite in the instant analysis primarily because it does not construe North Dakota law, as we are bound to do, but rather was an admiralty case and thus does not address the heart of the matter we now face.
The North Dakota Supreme Court has rarely spoken of the economic loss doctrine subsequent to Dakota Gasification, and as relevant to the specific question before us today, has only done so in dicta. Arena Holdings cites this dicta, however, in support of its position on appeal. In Clarys v. Ford Motor Co., 592 N.W.2d 573 (N.D. 1999), the plaintiff sought to recover in tort for the loss of a used van that was destroyed by fire due to a defective ignition switch. Id. at 573. Damage to “other property” was not at issue in the case. In dicta, however, the Supreme Court of North Dakota stated that there was a distinction between damage to the product and damage to “other property” and that this distinction was not without consequence under the public policy of North Dakota. Id. at 574-75. The court cited the Restatement (Third) of Torts, and noted that while the economic loss doctrine should preclude tort recovery for damage to the defective product itself, when the defective product causes damage to persons or other property, tort law would apply. Id. at 578-79; see also Steiner, 606 N.W.2d at 884 (applying the economic loss doctrine in a case where the only damage was to the defective product, a car, and quoting the language from Clarys distinguishing the situation from when the defective product causes damage to persons or other property). The ultimate holding in Clarys, however, only clarified that the economic loss doctrine applies equally in commercial and consumer contexts alike, as that was the “sole” issue raised. Clarys, 592 N.W.2d at 574, 579. Importantly, Clarys did not discuss the rationale underlying the economic loss doctrine in the context of discerning the definition of “other property” and where the line falls between “[t]he separate and distinct functions served by tort and contract law.” Id. at 575.
While we acknowledge that some doubt concerning the issue at hand is raised by North Dakota’s subsequent discussion of the economic loss doctrine, Clarys and Steiner do not stand as decisive legal authority sufficient to conclude that North Dakota would shun the foreseeability approach advanced in Dakota Gasification. It still remains that North Dakota has specifically discerned the very critical distinction that exists between contract and tort and the balance achieved by limiting liability so that one does not subsume the other. Too, this dicta could be interpreted differently. It is not axiomatic that North Dakota’s later discussion points to a rejection of the foreseeability approach to the economic loss doctrine. Clarys acknowledges that the economic loss doctrine protects the purchaser’s expectation of receiying the bargained-for product, and that the comprehensive framework available in contract compensates consumers when a product fails to fulfill a purchaser’s economic expectations. Clarys, 592 N.W.2d at 576. “ ‘Tort principles more adequately address the creation of an unreasonable risk of harm when a person or other property *296 sustains accidental or unexpected injury.’ ” Id. (quoting Alloway v. Gen. Marine Indus., 149 N.J. 620, 695 A.2d 264, 268-69 (1997)). “The economic loss rule is the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others.” Id. (internal quotation' omitted). These analyses discussed in Clarys parallel that of the foreseeability approach used when discussing damage to “other property,” and it is thus not certain that if faced with the very issue of how to define “other property” in light of those considerations, North Dakota would not follow suit and apply the foreseeability approach.
Barring tort claims where a plaintiff seeks economic damages for foreseeable losses for which the plaintiff could have contractually allocated risk' is admittedly no longer a “modern trend” as we described in 1996. Dakota Gasification, 91 F.3d at 1099. However, neither is it an antiquated or disfavored approach. In fact, the Third Circuit recently discussed the split.in authority regarding the meaning of “other property” in the context of the economic loss doctrine and deduced that:
[t]he majority of jurisdictions employ some variation of a test under which tort remedies are unavailable for property damage experienced by the owner where the damage was a foreseeable result of a defect at the time the parties contractually determined their respective exposure to risk, regardless whether the damage was to the “goods” themselves or to “other property.”
Travelers Indent. Co. v. Dammann & Co., 594 F.3d 238, 250 (3d Cir.2010) (internal quotation omitted) (predicting the course New Jersey would take on the matter and collecting cases employing the foreseeability approach as opposed to those applying a more bright line approach).
The similarities between the instant case and Dakota Gasification, in the end, dictate the result. No matter our independent inquiry today, and because North Dakota has yet to speak on the matter, we follow the precedent established in Dakota Gasification.[2]
Although our circuit has never specifically determined the binding effect of a state law determination by a prior panel, other circuits defer to prior panel decisions absent a subsequent state court decision or statutory amendment that makes the prior federal opinion clearly wrong. This provides us with an additional basis for our holding.
AIG Centennial Ins. Co. v. Fraley-Landers, 450 F.3d 761, 767-68 (8th Cir.2006) (alteration, citations and internal quotation omitted). “Absent an intervening opinion by a [North Dakota] court, [Dakota Gasification] controls this appeal.” Washington v. Countrywide Home Loans, Inc., 747 F.3d 955, 958 (8th Cir.), cert. denied, — U.S.-, 135 S.Ct. 307, 190 L.Ed.2d 142 (2014); see also Huffman v. Credit Union of Texas, 758 F.3d 963, 966 (8th Cir.2014) (holding that “we are bound by our [prior panel] decision” concerning the meaning of state law).
*297 B. Foreseeability
Arena Holdings alternatively argues that even if we do not retreat from Dakota Gasification’s foreseeability approach, the economic loss doctrine does not bar recovery because nothing about the specific accident itself was foreseeable, and there was no evidence that the parties anticipated or negotiated about the possibility of such an occurrence. We agree with the district court that the existence of the indemnification and warranty clauses here inform the outcome in this case, although that is not always true in each analysis. Arena Holdings would have us look at the contractual clauses here to see if, in fact, the damage at issue is “covered”.and that if not, then these tort actions may proceed. However, this argument runs wholly contrary to the very purpose of the. economic loss doctrine.
One basis for the economic loss doctrine is the resistance to the usurpation of contract law by tort law. Clarys, 592 N.W.2d at 577. Followed to its logical conclusion, Arena Holdings’ argument would lead to contrary consequences. “The availability of a tort remedy in a case such as this would encourage buyers like [Arena Holdings] to forgo contractual protection in exchange for a lesser purchase price ... [and s]ueh an approach would yield results that conflict with the economic loss doctrine’s very purpose.” Travelers, 594 F.3d at 249; see also Dakota Gasification, 91 F.3d at 1100 (“A contrary holding would yield results that conflict with the economic loss doctrine’s purpose, as recognized by the North Dakota Supreme Court ... [and allowing tort remedies in a case such as this would perversely encourage contractors to.‘bargain’ for no warranty or insurance protection in exchange for a reduced purchase price, because they could rely on tort remedies as their ‘warranty.’ ”).
Evidence of bargaining or negotiation, or the lack thereof, is not necessarily part of the foreseeability analysis. Yet, contrary to Arena Holdings’ arguments, the existence of indemnification and warranty clauses on these facts evinces an ability to negotiate and to provide for the allocation of risk and the limitation of liability in this very area, which supports the foreseeable approach discussed in Dakota Gasification. Travelers, 594 F.3d at 249; see also Dakota Gasification, 91 F.3d at 1100 (noting that the agreement entered into between the parties evinced an intent by the parties to evaluate the risks and liabilities that potentially would follow if the materials failed to perform and noted that the “language demonstrate[d] that the damage which occurred here was ’well within the contemplation of the parties.”). It was foreseeable to the contracting parties that a defect in an amplifier or the sound system as a whole could lead to fire and resulting damage. This was not beyond contemplation. Dakota Gasification, 91 F.3d at 1099. Under the foreseeability analysis set out in Dakota Gasification, these damages are thus not recoverable in tort. Id. at 1099-1101.
III. CONCLUSION
For the reasons discussed herein, we affirm the district court’s grant of summary judgment in this matter.

. The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

. Exercising our sound discretion, and because nothing has transpired in North Dakota since this court's Dakota Gasification prediction that would alter an analysis of the matter, we decline Arena Holding's request to certify a question to the North Dakota Supreme Court pursuant to Rule 47 of the North Dakota Rules of Appellate Procedure. Babinski v. Am. Family Ins. Group, 569 F.3d 349, 353 (8th Cir.2009) ("Whether a federal court should certify a question to a state court is a matter of discretion.” (quotation omitted)).