# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1445
_____

Leonetti's Frozen Foods, Inc.

*Plaintiff - Appellant*

v.

Rew Marketing, Inc.

*Defendant*

Crew, Inc., doing business as Rew Marketing, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: February 14, 2018
Filed: April 11, 2018

_____

Before LOKEN, BENTON, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

In 2014, Leonetti's Frozen Foods, Inc. hired Crew, Inc. to market and sell stromboli products to Sam's Club. One of these products was intended for sale in Sam's Club's in-store cafes. The in-store café product needed to be reformulated so

that it could be heated in Sam's Club's impinger pizza ovens. Leonetti's worked for months to ensure that the café stromboli met Sam's Club's stringent requirements, which demanded that the stromboli pass two crucial tests. Leonetti's eventually succeeded in passing the two tests. Shortly after receiving news that the stromboli passed the tests and reviewing photographs of the testing, Crew President Jeff Campigli inadvertently sent a reply-all email that expressed his pleasure that the testing had gone so well. In the email, Campigli suggested that some of the photographs were so good they could be used to market the product to Costco, Sam's Club's primary competitor. The following month, Sam's Club terminated discussions with Leonetti's.

Leonetti's filed an action against Crew, asserting that the email caused Sam's Club to decline to purchase Leonetti's stromboli products. The district court, having jurisdiction under 28 U.S.C. § 1332(a)(1), granted summary judgment against Leonetti's on all counts but one. On appeal, jurisdiction is proper in this court under 28 U.S.C. § 1291. For the reasons stated below, we reverse.

**I.**

Leonetti's is in the business of developing and manufacturing a variety of frozen food products. In August 2014, Leonetti's and Sam's Club began discussing the possible purchase of two stromboli products: "Leonetti's Frozen Stromboli" and "Café Stromboli." Leonetti's hired Crew as a broker for the testing and approval process. Crew was already Leonetti's broker for Costco.

Leonetti's needed to reformulate its pepperoni and provolone cheese Café Stromboli to meet Sam's Club's requirements—which were being driven by the impinger ovens that Sam's Club uses to heat its pizza products. In essence Sam's Club required the stromboli product to pass both a temperature test and a hold test before it would be willing to purchase the stromboli for resale. The testing process

began in late September 2014.  It is undisputed that during October and November 2014 Leonetti's struggled to achieve the requisite internal temperature (at least 135 degrees) without burning the stromboli or having cold pockets inside the stromboli.

Leonetti's successfully reformulated the stromboli by changing the dough and surface area.  By early December 2014, Sam's Club Senior Vice President Shawn Baldwin told Leonetti's co-owner Robert Ippaso that Leonetti's had made substantial progress, writing, "John [Hawthorne, the café buyer for Sam's Club,] told me that you are getting close on the Stromboli heating evenly [t]o a point we can test and sell some soon."  The stromboli met Sam's Club's internal-temperature benchmark in tests conducted during the week of December 7, 2014, and on December 16, 2014.

That same day, Hawthorne requested that Leonetti's develop a ham and pepperoni stromboli to sell in addition to the pepperoni and provolone stromboli. Crew Chief Executive Officer Cindy Romines-Towler told Leonetti's that after the holidays, the ham and pepperoni product would undergo temperature tests, the pepperoni and provolone product would undergo a hold test, and if the latter passed the hold test, the parties would "move forward."  On January 13, 2015, the ham and pepperoni stromboli failed a temperature test, and Hawthorne concluded that the original pepperoni and provolone stromboli was better.

On January 14, 2015, the pepperoni and provolone stromboli passed temperature and hold tests.  That day, Romines-Towler emailed Hawthorne to report the favorable results:

> John and Jeremy good day!  I completed the in-club testing this morning at the Bentonville Sam's Club.  Test went extremely well.  I used 8 Stromboli's in the test.  The additional samples were used to determine where to start the pans as the temperature and times were not set at 485* - 6 minutes.  The ovens were set at 500* - 6:30, club associate said they started the pizzas at the entrance of the oven and recommended we do

the same.  I found that the top oven cooked hotter than the 2nd and 3rd oven.  While the top oven did not burn the Stromboli they were a little darker than we like to have.

Attached is a recap of the testing.

Please let me know if you have any questions and what our next steps will be.

Minutes later, Campigli, who was blind copied on Romines-Towler's email, hit reply all and sent the following email (the "Costco email"): "Nice job Cindy.  Robert [Ippaso] and I could even use slides 2-5 in our Costco Presentation next week :)."

Hawthorne responded, "I believe we received this note in error.  Please be advised, I have not forwarded it and it will be deleted.  Thank you."  Contrary to his representations, Hawthorne did not delete the email, instead forwarding it to his boss, Dennis Horn, saying: "So this is interesting . . . . . . . and obviously not something meant for us."

Ippaso replied to Hawthorne, thanking him for his understanding and admitting that Leonetti's was invited the previous year to present a different product to Costco. Hawthorne did not respond but instead forwarded the email to Horn commenting, "I believe this is the owner."  The same day, Campigli sent an email apology to Hawthorne, who again did not reply but instead forwarded the email to Horn.

Hawthorne testified that he regarded the Costco email as a "grievous error" and that it would be "unethical" for Leonetti's to use slides documenting test results for a possible Sam's Club product in a presentation to Costco.  Hawthorne acknowledged that Leonetti's sharing of the product that it developed exclusively for Sam's Club would be "a very serious issue."  Hawthorne also testified that he considered the Costco email "a joke" and that he did not take it seriously.

Over the next three weeks, Romines-Towler tried unsuccessfully to contact Hawthorne both by phone and email. At his deposition, Hawthorne offered no reason for his failure to respond. Hawthorne did not make contact with Crew or Leonetti's until February 3, 2015. In the meantime, despite Hawthorne's original claims to the contrary, Leonetti's did not fail any further tests.

When Hawthorne finally got back to Romines-Towler, he did so in order to terminate Sam's Club's relationship with Leonetti's, sending an email stating:

> Cindy,
>
> We have tried and tried several revisions of this product. And to be honest, the very first version was the best. We did, as you know, have several temperature problems from day one. Cindy, you and your team are well aware of the efforts put forth. We battled cold pockets several times and a change in cheese (which lowered quality) and then finally get the temperature consistent. We tested on January 14 here in our kitchens and the bottoms burned. It would be an unacceptable product to put in front of the Members. Most importantly, we have not yet had a version of the Stromboli that I have found acceptable to take to a taste panel.
>
> I would like to put this product on the shelf. We sincerely appreciate all your efforts and hard work to try and make this work.
>
> Thank you, Cindy. Please let me know if you have any questions.

Consistent with this email, Hawthorne testified in his deposition that Sam's Club terminated the project development for performance issues and that the decision was uninfluenced by the Costco email. No document in Sam's Club's files indicates that the Costco email was considered in the decision.

Leonetti's commenced this action against Crew for negligence, breach of contract, breach of fiduciary duty, and trade libel. The district court granted summary judgment for Crew on each count except the breach of contract count, which was later dismissed with prejudice pursuant to a stipulation entered into by the parties. In granting summary judgment, the district court expressed, "There is powerful evidence in the record that Mr. Campigli's email did not cause Sam's Club not to purchase frozen food from Leonetti's." The district court further explained:

> Ultimately, the only evidence in the record to support the contention that Mr. Campigli's email caused Sam's Club not to purchase the products, is the bare fact that the decision not to purchase was made only a few weeks after Mr. Campigli's email was sent. There is no documentary or testimonial evidence anywhere in the record that any person in the decision-making process based the decision in any way on Mr. Campigli's email, and there *is* evidence that they did *not*. To permit the issue of causation to reach a jury on this record would be to invite pure speculation from the finder of fact.

Leonetti's appeals the adverse grant of summary judgment.

## II.

The issue on appeal is whether the district court erred by granting summary judgment in favor of Crew after improperly weighing the evidence and determining Hawthorne's testimony was credible. We review de novo the district court's grant of summary judgment. Banks v. Slay, 875 F.3d 876, 880 (8th Cir. 2017) (citing Odom v. Kaizer, 864 F.3d 920, 921 (8th Cir. 2017)). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Arena Holdings Charitable, LLC v. Harman Prof'l, Inc., 785 F.3d 292, 293 (8th Cir. 2015) (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). In ruling on a summary judgment motion,

a court must view the facts in the light most favorable to the non-moving party. Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013) (quoting Torgerson, 643 F.3d at 1042). In reaching its decision, a court "should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." Quick v. Donaldson Co., 90 F.3d 1372, 1376–77 (8th Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

In its grant of summary judgment, the district court failed to consider evidence rebutting the explanation in Hawthorne's email and evidence beyond mere timing that the Costco email was the reason for the termination. By doing so, the district court improperly weighed the evidence and improperly determined that Hawthorne's testimony was credible. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Anderson, 477 U.S. at 249) ("By failing to credit evidence that contradicted some of its key factual conclusions, the court improperly 'weigh[ed] the evidence' and resolved disputed issues in favor of the moving party.").

In particular the court failed to consider Leonetti's evidence offered to rebut Hawthorne's email explaining that Sam's Club was terminating the project for product quality concerns. In his email, Hawthorne stated that Leonetti's had trouble coming up with an acceptable product, particularly with regard to temperature, which is admittedly undisputed by the parties so far as it goes. The rest of the story is that Leonetti's was finally able to pass both the temperature and hold tests—Sam's Club's requirement before the parties would "move forward." When pressed to explain why Sam's Club terminated the relationship after the passed tests, Hawthorne testified that Leonetti's product must have failed a test after January 14, 2015. He later conceded in his deposition that no evidence substantiated this claim. Romines-Towler testified that the product did not fail any tests after that date. Hawthorne explained in the termination email that the bottoms of the stromboli burned during the January 14th test, but Romines-Towler wrote to him on January 14 that the "[t]est went extremely

well." Leonetti's also filed photos from the test that do not appear to show burnt stromboli.

Contrary to the district court's order, Leonetti's also presented evidence beyond mere timing that the project termination was caused by the Costco email. Leonetti's was told that the parties would "move forward" if the stromboli passed both temperature and hold tests. The stromboli passed the required tests on January 14, 2015, the day the Costco email was sent. Prior to the Costco email, Leonetti's and Crew had frequent communication with Sam's Club; after the email, Hawthorne went silent, ignoring Crew's emails and calls for three weeks. Hawthorne testified that the Costco email was a "grievous error" and that sharing a product developed exclusively for Sam's Club would be "unethical" and "a very serious issue." Although Leonetti's presented no direct evidence that the Costco email caused the project termination, there is sufficient circumstantial evidence to show causation. See New Maumelle Harbor v. Rochelle, 991 S.W.2d 552, 554 (Ark. 1999) (quoting Wallace v. Broyles, 961 S.W.2d 712, 715 (Ark. 1998)) ("Proximate cause may be shown from circumstantial evidence, and 'such evidence is sufficient to show proximate cause if the facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred.'").

"Considered together, these facts lead to the inescapable conclusion that the court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion." Tolan, 134 S. Ct. at 1867–68. Because a genuine issue of material fact exists as to the causation of the project termination, the district court erred by granting summary judgment.

## III.

For the foregoing reasons, we reverse the judgment of the district court and remand for proceedings consistent with this opinion.

———————————————