# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1853

_____

Arena Holdings Charitable, LLC, a Delaware limited liability company; RE Arena, Inc., a Nevada foreign corporation

*Plaintiffs - Appellants*

v.

Harman Professional, Inc.

*DefendantThird Party Plaintiff - Appellee*

v.
.

Impulse Group, Inc.; Impulse Group LLC; HB Sound & Light, Inc.

*Third Party Defendant*s

ON Semiconductor Corporation

*Third Party Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: November 12, 2014
Filed: May 7, 2015

_____

Before RILEY, Chief Judge, BEAM and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Arena Holdings Charitable, LLC, and RE Arena, Inc. ("Arena Holdings") appeal the district court's[1] grant of summary judgment in favor of Harman Professional in this tort claim arising out of a fire that occurred at the Ralph Engelstad Arena in Grand Forks, North Dakota. We affirm.

## I.    BACKGROUND

The facts involved in this case as described by the district court are uncontested on appeal. This matter arises from a fire that occurred at the Ralph Engelstad Arena on July 3, 2011. Arena Holdings alleges the fire started when a Crown Macro-Tech 5002VZ amplifier produced a direct current to a speaker that spread to adjoining speakers located in the catwalk area of the Engelstad Arena. Harman Professional is the manufacturer of the alleged defective amplifier, and Impulse Group installed the sound reinforcement system at the Engelstad Arena when it was originally built, and so installed the amplifier as well.

The fire caused approximately $5 million of damage throughout the Engelstad Arena, including damage to the building and fixtures, as well as damage to personal property. The fire directly damaged the arena structure and equipment in the vicinity of the amplifier and speakers. The presence of smoke and soot throughout the Engelstad Arena after the fire caused additional damage. Arena Holdings initiated this action against Harman alleging negligence, strict liability and post-sale failure-to-

_____

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

warn claims. Harman then filed a third-party complaint against Impulse Group, and others. The district court granted Harman's motion for summary judgment, finding that the economic loss doctrine precluded Arena Holdings from recovering tort damages.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Id. (quotation omitted).

### A.    Economic Loss Doctrine

Under the economic loss doctrine in North Dakota, economic loss resulting from damage to a defective product, as distinguished from damage to persons or other property, may be recovered in a cause of action sounding in contract, but not in tort. Leno v. K & L Homes, Inc., 803 N.W.2d 543, 550 (N.D. 2011). "The economic loss doctrine distinguishes between bargain expectation interests, which are protected under contract law, and safety interests, which are protected under tort law." Steiner v. Ford Motor Co., 606 N.W.2d 881, 885 (N.D. 2000). North Dakota has yet to directly rule on the issue presented here–whether, or to what extent, redress can be sought in tort where there is injury not only to the defective product but also to other property.

In 1996, this circuit had occasion to predict how North Dakota would analyze this very subject in Dakota Gasification Co. v. Pascoe Building Systems and held that the North Dakota Supreme Court would likely conclude "that the economic loss doctrine extends to preclude liability in tort for physical damage to other nearby

property of commercial purchasers who could foresee such risks at the time of purchase." 91 F.3d 1094, 1101 (8th Cir. 1996). The facts and circumstances of Dakota Gasification as they relate to the contracting parties in this case are nearly identical.

In Dakota Gasification, the predecessor to the owner of a large coal gasification plant contracted for the construction of a federally guaranteed $2 billion synthetic natural gas production plant, which was to be "one of the largest synthetic fuel plants in the world and the only one of its kind in the United States." Id. at 1096. In part, the plans called for the construction of an oxygen plant, which was to be housed in a separate steel building but still within the larger plant. Id. Down a chain of subcontractors involved in the overall project, none of whom directly contracted with the Dakota Gasification plaintiff, one subcontractor that was to furnish the pre-engineered metal building that would enclose the oxygen plant contracted with Defendant Pascoe Building Systems who furnished the structural steel for the building. Id.

During the construction process in Dakota Gasification, several defective welds were discovered on some of the Pascoe materials and Pascoe repaired them. Id. The building was ultimately accepted after construction was completed. Id. However, eight years later, the roof of the building collapsed, causing damage to the steel building as well as parts of the oxygen plant contained within. Id. at 1097. The owner of the gasification plant sued Pascoe, among others, seeking to recover damages. Id. On appeal of an adverse summary judgment ruling in favor of Pascoe, the Eighth Circuit predicted that North Dakota would take the "modern," foreseeability approach to the economic loss doctrine. Id. at 1100-01. Applying this approach, this court held that because damage to the other property in the physical proximity of the oxygen plant was foreseeable and within the contemplation of the parties when the oxygen plant was built, the economic loss doctrine precluded recovery. Id. at 1101.

Arena Holdings contends that Dakota Gasification missed the mark, pointing to a Supreme Court decision in 1997, see Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875 (1997), as well as the Restatement (Third) of Torts: Products Liability § 21, which both take a different approach to the economic loss doctrine. Arena Holdings essentially urges this court to define a more bright line rule–that physical damage to anything other than the product itself would be considered damage to "other property" and therefore subject to suit in tort. This, they argue, is more in line with the Supreme Court's articulation in Saratoga Fishing and is most likely the avenue North Dakota would travel.

In Saratoga Fishing, the Court addressed the limits on the damages that a tort plaintiff can recover for physical damage to property caused by a defective product. 520 U.S. at 876. The admiralty case involved a defectively designed hydraulic system in a fishing vessel, and the specific issue was whether equipment that had been added on by the boat's initial owner after its purchase from the manufacturer was "other property" such that its loss could be recovered in tort. Id. at 877-78. The ship itself constituted the original property. Id. at 877. Applying and building upon its previous decision in East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858 (1986), the Court determined that equipment added to a product after manufacture is not part of the original property, and in fact is "other property," and compensation for damage to this other property can be recovered in tort. Id. at 879, 881.

Arena Holdings also alleges that the most recent version of the Restatement of Torts adopts the Saratoga Fishing approach as to whether damages to "other property" due to a defective product can be recovered in tort. Restatement (Third) of Torts: Products Liability Ch. 4, Topic 3, § 21 cmt. e ("A defective product that causes harm to property other than the defective product itself is governed by the rules of this Restatement. What constitutes harm to other property rather than harm to the product itself may be difficult to determine."). According to Arena Holdings, the Court's position in Saratoga Fishing (bolstered by the Restatement) provides a reason for us

to distance ourselves from the Dakota Gasification decision. At bottom, though, Saratoga Fishing is inapposite in the instant analysis primarily because it does not construe North Dakota law, as we are bound to do, but rather was an admiralty case and thus does not address the heart of the matter we now face.

The North Dakota Supreme Court has rarely spoken of the economic loss doctrine subsequent to Dakota Gasification, and as relevant to the specific question before us today, has only done so in dicta. Arena Holdings cites this dicta, however, in support of its position on appeal. In Clarys v. Ford Motor Co., 592 N.W.2d 573 (N.D. 1999), the plaintiff sought to recover in tort for the loss of a used van that was destroyed by fire due to a defective ignition switch. Id. at 573. Damage to "other property" was not at issue in the case. In dicta, however, the Supreme Court of North Dakota stated that there was a distinction between damage to the product and damage to "other property" and that this distinction was not without consequence under the public policy of North Dakota. Id. at 574-75. The court cited the Restatement (Third) of Torts, and noted that while the economic loss doctrine should preclude tort recovery for damage to the defective product itself, when the defective product causes damage to persons or other property, tort law would apply. Id. at 578-79; see also Steiner, 606 N.W.2d at 884 (applying the economic loss doctrine in a case where the only damage was to the defective product, a car, and quoting the language from Clarys distinguishing the situation from when the defective product causes damage to persons or other property). The ultimate holding in Clarys, however, only clarified that the economic loss doctrine applies equally in commercial and consumer contexts alike, as that was the "sole" issue raised. Clarys, 592 N.W.2d at 574, 579. Importantly, Clarys did not discuss the rationale underlying the economic loss doctrine in the context of discerning the definition of "other property" and where the line falls between "[t]he separate and distinct functions served by tort and contract law." Id. at 575.

While we acknowledge that some doubt concerning the issue at hand is raised by North Dakota's subsequent discussion of the economic loss doctrine, Clarys and Steiner do not stand as decisive legal authority sufficient to conclude that North Dakota would shun the foreseeability approach advanced in Dakota Gasification. It still remains that North Dakota has specifically discerned the very critical distinction that exists between contract and tort and the balance achieved by limiting liability so that one does not subsume the other. Too, this dicta could be interpreted differently. It is not axiomatic that North Dakota's later discussion points to a rejection of the foreseeability approach to the economic loss doctrine. Clarys acknowledges that the economic loss doctrine protects the purchaser's expectation of receiving the bargained-for product, and that the comprehensive framework available in contract compensates consumers when a product fails to fulfill a purchaser's economic expectations. Clarys, 592 N.W.2d at 576. "'Tort principles more adequately address the creation of an unreasonable risk of harm when a person or other property sustains accidental or unexpected injury.'" Id. (quoting Alloway v. Gen. Marine Indus., 695 A.2d 264, 268-69 (N.J. 1997)). "The economic loss rule is the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." Id. (internal quotation omitted). These analyses discussed in Clarys parallel that of the foreseeability approach used when discussing damage to "other property," and it is thus not certain that if faced with the very issue of how to define "other property" in light of those considerations, North Dakota would not follow suit and apply the foreseeability approach.

Barring tort claims where a plaintiff seeks economic damages for foreseeable losses for which the plaintiff could have contractually allocated risk is admittedly no longer a "modern trend" as we described in 1996. Dakota Gasification, 91 F.3d at 1099. However, neither is it an antiquated or disfavored approach. In fact, the Third Circuit recently discussed the split in authority regarding the meaning of "other property" in the context of the economic loss doctrine and deduced that:

> [t]he majority of jurisdictions employ some variation of a test under which tort remedies are unavailable for property damage experienced by the owner where the damage was a foreseeable result of a defect at the time the parties contractually determined their respective exposure to risk, regardless whether the damage was to the "goods" themselves or to "other property."

Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 250 (3d Cir. 2010) (internal quotation omitted) (predicting the course New Jersey would take on the matter and collecting cases employing the foreseeability approach as opposed to those applying a more bright line approach).

The similarities between the instant case and Dakota Gasification, in the end, dictate the result. No matter our independent inquiry today, and because North Dakota has yet to speak on the matter, we follow the precedent established in Dakota Gasification.[2]

> Although our circuit has never specifically determined the binding effect of a state law determination by a prior panel, other circuits defer to prior panel decisions absent a subsequent state court decision or statutory amendment that makes the prior federal opinion clearly wrong. This provides us with an additional basis for our holding.

AIG Centennial Ins. Co. v. Fraley-Landers, 450 F.3d 761, 767-68 (8th Cir. 2006) (alteration, citations and internal quotation omitted). "Absent an intervening opinion

---

[2]Exercising our sound discretion, and because nothing has transpired in North Dakota since this court's Dakota Gasification prediction that would alter an analysis of the matter, we decline Arena Holding's request to certify a question to the North Dakota Supreme Court pursuant to Rule 47 of the North Dakota Rules of Appellate Procedure. Babinski v. Am. Family Ins. Group, 569 F.3d 349, 353 (8th Cir. 2009) ("Whether a federal court should certify a question to a state court is a matter of discretion." (quotation omitted)).

by a [North Dakota] court, [Dakota Gasification] controls this appeal." Washington v. Countrywide Home Loans, Inc., 747 F.3d 955, 958 (8th Cir.), cert. denied, 135 S. Ct. 307 (2014); see also Huffman v. Credit Union of Texas, 758 F.3d 963, 966 (8th Cir. 2014) (holding that "we are bound by our [prior panel] decision" concerning the meaning of state law).

## B.     Foreseeability

Arena Holdings alternatively argues that even if we do not retreat from Dakota Gasification's foreseeability approach, the economic loss doctrine does not bar recovery because nothing about the specific accident itself was foreseeable, and there was no evidence that the parties anticipated or negotiated about the possibility of such an occurrence. We agree with the district court that the existence of the indemnification and warranty clauses here inform the outcome in this case, although that is not always true in each analysis. Arena Holdings would have us look at the contractual clauses here to see if, in fact, the damage at issue is "covered" and that if not, then these tort actions may proceed. However, this argument runs wholly contrary to the very purpose of the economic loss doctrine.

One basis for the economic loss doctrine is the resistance to the usurpation of contract law by tort law. Clarys, 592 N.W.2d at 577. Followed to its logical conclusion, Arena Holdings' argument would lead to contrary consequences. "The availability of a tort remedy in a case such as this would encourage buyers like [Arena Holdings] to forgo contractual protection in exchange for a lesser purchase price . . . [and s]uch an approach would yield results that conflict with the economic loss doctrine's very purpose." Travelers, 594 F.3d at 249; see also Dakota Gasification, 91 F.3d at 1100 ("A contrary holding would yield results that conflict with the economic loss doctrine's purpose, as recognized by the North Dakota Supreme Court

. . . [and a]llowing tort remedies in a case such as this would perversely encourage contractors to 'bargain' for no warranty or insurance protection in exchange for a reduced purchase price, because they could rely on tort remedies as their 'warranty.'").

Evidence of bargaining or negotiation, or the lack thereof, is not necessarily part of the foreseeability analysis. Yet, contrary to Arena Holdings' arguments, the existence of indemnification and warranty clauses on these facts evinces an ability to negotiate and to provide for the allocation of risk and the limitation of liability in this very area, which supports the foreseeable approach discussed in Dakota Gasification. Travelers, 594 F.3d at 249; see also Dakota Gasification, 91 F.3d at 1100 (noting that the agreement entered into between the parties evinced an intent by the parties to evaluate the risks and liabilities that potentially would follow if the materials failed to perform and noted that the "language demonstrate[d] that the damage which occurred here was well within the contemplation of the parties."). It was foreseeable to the contracting parties that a defect in an amplifier or the sound system as a whole could lead to fire and resulting damage. This was not beyond contemplation. Dakota Gasification, 91 F.3d at 1099. Under the foreseeability analysis set out in Dakota Gasification, these damages are thus not recoverable in tort. Id. at 1099-1101.

## III.   CONCLUSION

For the reasons discussed herein, we affirm the district court's grant of summary judgment in this matter.

RILEY, Chief Judge, dissenting.

Because (1) the North Dakota Supreme Court has approved tort recovery for damage to "other property" and directed its state courts away from the foreseeability approach we erroneously predicted twenty years ago in Dakota Gasification Co. v. Pascoe Building Systems, 91 F.3d 1094 (8th Cir. 1996), and (2) even if Dakota

Gasification states the relevant test, it would not control the facts of this case, I dissent.[3]

## I. North Dakota Law

"The economic loss doctrine recognizes the distinction between the bargain expectation interests protected by contract law under the Uniform Commercial Code and the safety interests protected by tort law." Clarys v. Ford Motor Co., 592 N.W.2d 573, 578 (N.D. 1999). "'[I]t prevents tort law from altering the allocation of costs and risks negotiated by the parties'" by "'den[ying] a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations.'" Dannix Painting, LLC v. Sherwin-Williams Co., 732 F.3d 902, 906 (8th Cir. 2013) (quoting Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 882 (8th Cir. 2000), and Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank, 265 F.3d 601, 615 (7th Cir. 2001)).

In 1992, the North Dakota Supreme Court held, "[A] manufacturer of a machine sold in a commercial transaction may not be held liable in negligence or strict liability for economic loss caused by a failure of a component part of the machine which causes damage to the machine only." Coop. Power Ass'n v. Westinghouse Elec. Corp., 493 N.W.2d 661, 667 (N.D. 1992). In doing so, the North Dakota Supreme Court adopted the economic loss doctrine as announced in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986), agreeing with East River that the economic loss doctrine is necessary to preserve the distinction between tort liability—which flows from the responsibility and capability of a manufacturer to ensure the safety of its products—and contract liability—which flows from "losses [that] essentially relate to the benefit of the bargain between

---

[3]Under the principles of Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), it is axiomatic that "[a]s a federal court, our role in diversity cases is to interpret state law, not to fashion it" or "expand [it] in ways not foreshadowed by state precedent." Kingman v. Dillard's, Inc., 643 F.3d 607, 615 (8th Cir. 2011) (quotations omitted).

business entities." Coop. Power, 493 N.W.2d at 664-65, 667. The court in Cooperative Power recognized that because "the rules of negligence and strict liability for damage to property other than the product itself and for personal injury adequately protect [society's] interest [in safe products] and provide manufacturers with incentive to produce safe products," economic loss to the product itself is recoverable only under contract and warranty principles. Id. at 665.

Four years later, we decided Dakota Gasification. "Although there [wa]s no North Dakota case directly on point" deciding whether the economic loss doctrine applied to property other than the product itself, we thought North Dakota would follow "the modern trend in many jurisdictions . . . that tort remedies are unavailable for property damage experienced by the owner where the damage was a foreseeable result of a defect at the time the parties contractually determined their respective exposure to risk, regardless whether the damage was to the 'goods' themselves or to 'other property.'" Dakota Gasification, 91 F.3d at 1099. We thus extended North Dakota's economic loss doctrine and predicted the state's supreme court would apply the doctrine to *all* property damage that could foreseeably result from a defect rather than rely upon a distinction between the purchased product and other property. See id.

The majority here perpetuates this flawed prediction because the North Dakota Supreme Court has not directly contradicted Dakota Gasification. "While we are loath to reject the considered judgment of a prior panel decision of our court, our task is to apply state law." Marvin Lumber, 223 F.3d at 883. Because it is not federal law we apply, we must utilize all "'relevant state precedent, analogous decisions, considered dicta, and any other reliable data'" to anticipate how the state's highest court would decide this case. Ashley Cnty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009) (quoting In re W. Iowa Limestone, Inc., 538 F.3d 858, 866 (8th Cir. 2008)). We cannot blithely look past the North Dakota Supreme Court's recent statements by adhering to a prediction based on a decades-old legal landscape. See,

-12-

e.g., <u>Holden Farms, Inc. v. Hog Slat, Inc.</u>, 347 F.3d 1055, 1066-67 (8th Cir. 2003) (giving a non-binding intermediate state court decision controlling weight over our earlier panel decision given the absence of "data suggesting the [state] Supreme Court would disagree with the" intermediate state court's decision).

### A. "Modern Trend" of Foreseeability

The unstable foundation upon which we built our position in <u>Dakota Gasification</u> has eroded over time. In <u>Dakota Gasification</u>, we relied primarily on a "modern trend in many jurisdictions" which we found consistent with the general rationale underlying <u>Cooperative Power</u>'s adoption of the economic loss doctrine. See <u>Dakota Gasification</u>, 91 F.3d at 1099. Shortly after our decision, that trend lost its momentum. In 1997, the United States Supreme Court explained that <u>East River</u>—the primary authority for the North Dakota Supreme Court in <u>Cooperative Power</u>—"held that an admiralty tort plaintiff cannot recover for the physical damage the defective product causes to the 'product itself'; but the plaintiff *can recover* for physical damage the product causes to 'other property.'" <u>Saratoga Fishing Co. v. J.M. Martinac & Co.</u>, 520 U.S. 875, 877 (1997) (emphasis added). The Supreme Court rejected the idea that "tort recovery for damage to . . . other property" could be precluded by "the mere possibility" that a product's manufacturer and initial purchaser could have negotiated a contract term apportioning potential loss for other property. <u>Id.</u> at 882. Soon after, the American Law Institute published the Restatement (Third) of Torts (Restatement), which employs an economic loss rule permitting recovery in tort for "harm to . . . the plaintiff's property other than the defective product itself." Restatement (Third) of Torts: Product Liability § 21(c) (1998); <u>see also id.</u> cmt. e. <u>Dakota Gasification</u>'s "modern trend" stalled.

The majority acknowledges the Restatement and <u>Saratoga Fishing</u> but dismisses "<u>Saratoga Fishing</u> [a]s inapposite in the instant analysis primarily because it does not construe North Dakota law . . . but rather was an admiralty case and thus does not address the heart of the matter we now face." <u>Ante</u> at 5-6. This distinction

ignores (1) the Restatement (which obviously applies outside admiralty), and (2) the fact that North Dakota derived its economic loss doctrine from East River, an admiralty law case. See Coop. Power, 493 N.W.2d at 664-67. The majority accepts Saratoga Fishing as "[a]pplying and building upon . . . East River," ante at 5, the very case North Dakota expressly followed. See Coop. Power, 493 N.W.2d at 667.

The foreseeability approach's earlier momentum, upon which we relied in Dakota Gasification, has since dissipated against the contrary views of the economic loss doctrine. See, e.g., 2-J Corp. v. Tice, 126 F.3d 539, 544 n.4 (3d Cir. 1997) (noting the disagreement as to whether "the economic loss doctrine bars tort recovery where the 'other property' damaged was always likely to have been injured upon the failure of 'the product' itself" and finding "more persuasive" the cases rejecting "this expansion of the economic loss doctrine"); Lesiak v. Cent. Valley Ag Coop., Inc., 808 N.W.2d 67, 84-85 (Neb. 2012) (per curiam) (rejecting the foreseeability approach because it "precludes tort recovery based on the mere possibility that the parties could have included a contract term dealing with the occurrence of the damage at issue"); Grams v. Milk Prods., Inc., 699 N.W.2d 167, 180 (Wis. 2005) (Abrahamson, C.J., dissenting) (reasoning that with a foreseeability threshold, Wisconsin's economic loss doctrine has become "a swelling globule on the [state's] legal landscape" akin to "the ever-expanding, all-consuming alien life form portrayed in the 1958 B-movie classic *The Blob*").

## B.     Recent Statements by the North Dakota Supreme Court

Since Dakota Gasification, the North Dakota Supreme Court unquestionably has shown it adheres to the dichotomy between the product itself and other property. In 1999, the North Dakota Supreme Court "consider[ed] for the first time whether the economic loss doctrine should be applied to consumers" in addition to commercial purchasers. Clarys, 592 N.W.2d at 575. The Clarys court found the economic loss doctrine applied to consumer transactions, reasoning, "When a defective product causes damage *to itself*, only the consumer's product expectations are infringed, and

-14-

those interests are protected under contract principles found within the remedies provided by the U.C.C." Id. at 576 (emphasis added). Throughout its discussion, the Clarys court reaffirmed its agreement with East River and reiterated that contract liability is for damage to "the product itself" while indicating tort liability *is* available for damage to "other property." Id. at 574-75, 577, 578-79. The court explained:

> When a defective product causes damage to persons or *other property*, the interest at stake is health and safety . . . . *Those safety interests are protected under tort law*, which allows recovery by injured plaintiffs against a seller or manufacturer of an unreasonably dangerous defective product. When, however, a product is defective and *damages only itself*, the interest at stake is the purchaser's expectation of receiving the bargained-for product. That interest is protected by the remedies provided under Article 2 of the Uniform Commercial Code.

Id. at 578-79 (emphasis added) (citation omitted); see also id. at 577-78 (interpreting North Dakota's Tort Reform Act of 1993 to permit "tort actions . . . when a defective product causes damage to persons or other property," but not "when only the defective product has been damaged").

The Clarys court expressly agreed with the drafters of the Restatement "that the Uniform Commercial Code, not product liability tort law, governs actions of persons seeking redress for damages when the injury is confined to the defective product itself, and neither persons *nor other property* are damaged." Id. at 578. In announcing its agreement with the Restatement, the court emphasized that its approach permits recovery in a product liability suit for harm to "'property *other than the defective product itself*,'" but not for harm "to the defective product itself." Id. (emphasis in original) (quoting Restatement (Third) of Torts: Product Liability § 21(c)).

-15-

Since Clarys, the North Dakota Supreme Court has only twice addressed the economic loss doctrine, and in both instances, it reiterated the distinction between the product itself and other damaged property. See Leno v. K & L Homes, Inc., 803 N.W.2d 543, 550 (N.D. 2011) ("[U]nder the economic loss doctrine in North Dakota, 'economic loss resulting from damage to a defective product, as distinguished from damage to other property or persons, may be recovered in a cause of action for breach of warranty or contract, but not in a tort action.'" (quoting Steiner v. Ford Motor Co., 606 N.W.2d 881, 884 (N.D. 2000))); Steiner, 606 N.W.2d at 884 ("'[D]amage to persons or other property . . . [is] protected under tort law.'" (quoting Clarys, 592 N.W.2d at 578)).

The majority dismisses these indications of North Dakota law, disregarding the discussion in Clarys as "dicta." Ante at 6-7. However, the signals in Clarys are more than just fleeting comments or unassuming word choices. The North Dakota Supreme Court's statements about "other property" represent an important part of the careful weighing and molding that went into the court's understanding and description of how best to balance contract law with tort. "[C]onsidered dicta" such as this provides crucial insight into the North Dakota Supreme Court's thinking, Ashley Cnty., 552 F.3d at 665, particularly when that same court cites and repeats the point in later cases, see, e.g., Leno, 803 N.W.2d at 550; Steiner, 606 N.W.2d at 884.

The majority notes the North Dakota Supreme Court's later cases do not expressly "point[] to a rejection of the foreseeability approach" advanced in Dakota Gasification. Ante at 7. While the majority may fit Dakota Gasification's foreseeability approach within portions of Clarys's *general* discussion of the role and underpinnings of the economic loss doctrine, the majority does not justify Dakota Gasification's outright disregard for the product/other property analysis in light of the North Dakota Supreme Court's recent decisions favoring such a distinction. Compare Dakota Gasification, 91 F.3d at 1099, 1101 (applying its foreseeability rule to preclude tort recovery "*regardless* whether the damage was to the 'goods' themselves

-16-

or to 'other property'" (emphasis added)), with Clarys, 592 N.W.2d at 578 (explaining tort law protects "damage to persons or other property").

I share the majority's respect for our prior panel's opinion. But time proved our prediction wrong, and the prediction should now give way to our obligation to apply North Dakota law in the way described by the highest court of that state. I believe North Dakota would not ask whether the harm was foreseeable but whether the harm occurred to "other property."

## II.  Foreseeability Under Dakota Gasification

Even accepting Dakota Gasification's test as controlling, that case does not preclude Arena Holdings's tort recovery under the summary judgment standard. See Fed. R. Civ. P. 56(a) (requiring summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

As "'the fundamental boundary between contract law . . . and tort law,'" Clarys, 592 N.W.2d at 576 (quoting Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc., 620 So. 2d 1244, 1246 (Fla. 1993)), the economic loss doctrine retains the delicate task of *balancing* the competing policy interests of both areas of the law—not just resisting "the usurpation of contract law by tort law," ante at 9 (citing Clarys, 592 N.W.2d at 577). The majority's foreseeability analysis does not account for the two primary circumstances that led the panel in Dakota Gasification to find the harm in that case foreseeable. Both circumstances are noticeably absent here.

First, in Dakota Gasification, the foreseeability inquiry was whether damage to a plant and its contents was a foreseeable result of defects in "structural components such as steel rafters, columns, and purlins," which were used in building the plant. Dakota Gasification, 91 F.3d at 1096-97, 1100. Such harm is nearly *per se* foreseeable when the potential defect lies in the plant's *structural* components

-17-

because the components' ability to hold up the building and protect its contents is the primary motivation for purchasing such materials. Our discussion of foreseeability in Dakota Gasification made special note of this fact on more than one occasion. See id. at 1100 (reasoning, in discussing our adoption of the foreseeability approach, that "it is difficult to imagine a scenario in which the natural consequence of an installed structural component's failure would be damage only to the structural component itself without any damage to the surrounding property"); id. (assessing foreseeability and analogizing the case to a Sixth Circuit decision because in both cases, "the defective structural components caused great damage to surrounding property"). In this case, it is not clear whether fire safety was a reason for purchasing Harman's amplifiers, and unlike the dangers of collapsing structural components, the bargained-for function of an amplifier normally would not entail an inherent danger of widespread fire damage and put these risks "within the scope of bargaining" *as a matter of law*. Grams, 699 N.W.2d at 175.

Second, in Dakota Gasification we looked to one other fact in assessing foreseeability: A limitation of liability provision in the purchase contract for the steel components stating, "SELLER SHALL NOT BE RESPONSIBLE FOR . . . DAMAGES TO THE CONTENTS OR FURNISHINGS IN ANY BUILDING." Dakota Gasification, 91 F.3d at 1100. That contract specifically allocated the risk of defects in the product harming the building's furnishings and contents. See id. (reasoning that "[t]his language demonstrates that *the damage which occurred here* was well within the contemplation of the parties" (emphasis added)).

But Harman relies on language declaring,

YOU ARE NOT ENTITLED TO RECOVER FROM US . . . ANY DAMAGE TO ANOTHER PRODUCT OR PRODUCTS RESULTING FROM . . . A DEFECT [IN THE PURCHASED PRODUCT].

-18-

This disclaimer acknowledges that an amplifier defect might damage "another product," but this statement is far too vague to give any sense that the fire and smoke damage here was one of the allocated risks considered during the bargaining.

Foreseeability of harm generally "is a question of fact for the jury, unless the facts are such that reasonable minds could not differ." Barsness v. Gen. Diesel & Equip. Co., 383 N.W.2d 840, 843 (N.D. 1986); accord Haugenoe v. Workforce Safety & Ins., 748 N.W.2d 378, 387 (N.D. 2008); see also Foremost Farms USA Coop. v. Performance Process, Inc., 726 N.W.2d 289, 297 (Wis. Ct. App. 2006) (considering foreseeability, as used in the economic loss doctrine, a "factual question"). In Dakota Gasification, the structural nature of the defect made the resulting damage a practical inevitability, a fact reflected by a limitation of liability clause specifically addressing damage to the building's furnishings and contents.

Before granting summary judgment to Harman, I would require a similarly undeniable indication of foreseeability. Harman's evidence here—(1) the user manual shipped with the amplifier, which referenced at one point the possibility of speakers overheating and warned at another point against the increased risk of fire should the amplifier be exposed to rain or moisture; (2) knowledge by the initial purchasing subcontractor that amplifiers could (but rarely did) cause fires; and (3) Arena Holdings's implementation of technical fire-safety specifications for contractors working on the arena project—is not so clear. On this evidence, the fire-risk of an amplifier defect might be foreseeable enough to bring the risk within the purview of the bargaining process, but that question is not beyond reasonable dispute and thus should be left to a jury.

## III.    Conclusion

Because I disagree that Dakota Gasification governs, I would return this case to the district court to address the economic loss doctrine under a dichotomy between the product itself and other property. Even applying Dakota Gasification, I would

-19-

still remand because there are material factual disputes precluding summary judgment.

_____